### HERRINGTON *et al.* v. TOLBERT *et al.*

Where taxes have accrued upon lands belonging to the estate of an intestate while in the hands of his administrator to be administered, and by proper order of the court of ordinary he sells the lands, the tax lien thereon is divested and transferred to the fund realized from the sale. This fund should be distributed according to the priorities established by the code.

Argued March 21, — Decided April 10, 1900.

Injunction.　Before　Judge　Lumpkin.　Fulton　county.
January 8, 1900.

The facts appear in the opinion filed by the judge of the su-
perior court, which is as follows:

"This case may be described as a contest between death and
the tax-collector.　These two have been for so long a time classi-
fied together, in respect to the quality of inevitableness, that it
has passed into a maxim that there is no escape from death or the
tax-collector.　When, therefore, after such aphoristic associa-
tion, they part company, and ally themselves with opposite sides
of a litigation, the unsophisticated taxpayer may well recall to
mind the ancient schoolboy conundrum which propounded the
query, if an irresistible force should come in contact with an im-
movable body, what would be the result?　The salient facts may
be thus briefly stated: Parker died in 1897, leaving certain
assets, of which the lot in controversy formed a part.　Banks ad-
ministered on the estate, and at the April term, 1898, of the
court of ordinary, obtained an order to sell, for the purpose of
payment of debts and for distribution.　He sold the property in
June, 1899, and the present plaintiffs became the purchasers.
On October 17, 1898, an execution for municipal taxes due the
City of Atlanta for the year 1898 was issued against the estate of
Parker.　It was a general execution, not a special one against the
land, or for taxes due on it alone by name.　This passed by sev-
eral transfers into the hands of Herrington, who acquired it in
October, 1899, and subsequently caused the marshal of the city
to levy it on the land; and this petition was filed to enjoin such
levy.　The question made and argued is, whether the holder of the
fi. fa. can cause the land to be levied on and sold, although it has
previously been sold by the administrator, or whether he should
claim payment from the proceeds of the sale, which are still in
the hands of the administrator.　There is another question as to
a loan deed, which I will speak of later, and which need not be
mentioned here.　Without stopping to discuss whether Herring-
ton occupies the status of the city as to the matter, but, for the
present purpose of the argument, supposing that he does, could
the city itself sell the lot, or should it look to the proceeds in the
hands of the administrator?　A municipality has a lien for

taxes due it. It is a lien of high rank, but a lien. Code, §§ 2790, 2791. In the Code of 1895, a new section (3453) was introduced, and by adoption stands as the law of this State. It reads: ' Where an administrator sells land under a proper order of the court of ordinary, liens thereon are divested and are transferred to the fund.' If the simple words of the statute be taken, therefore, this syllogism results: Major premise: An administrator's sale under proper order for payment of debts and distribution divests liens. Minor premise: The city has a lien for its taxes. Conclusion: Hence, the city's lien is divested by such a sale. But, aside from any mere literal construction of the law, what is the general scheme of legislation on this subject? While a party is in life, certain liens are created and their rank fixed. Thus judgments, mortgages, etc., according to date of rendition. Then there are certain other liens fixed by law. It has been held that after the death of the debtor a fi. fa. may still be levied, and, if levied before sale, may proceed in spite of a sale by the administrator. *Carlton* v. *Davant*, 58 *Ga.* 451. I will not discuss this decision, or whether the rule there laid down has been altered by section 3453 of the Code of 1895, already referred to. I only cite it as the single exception I have found to the statement that, after death and administration, and sale by the administrator for the purpose of paying debts, an entirely new status exists, both as to priorities and method of enforcement. To illustrate: In the lifetime of the decedent, judgments ranked according to seniority. But after his death the rendition of a judgment against his administrator would not confer any priority on the claim which formed its basis, or changed its rank. *Green* v. *Allen*, 45 *Ga.* 205 ; *Turk* v. *Ross*, 59 *Ga.* 378. So, during the decendent's lifetime, a sale of property mortgaged by him under a common-law execution would not divest the lien of the mortgage unless by consent, but it could still be foreclosed on the land in the hands of the purchaser. *Tarver* v. *Ellison*, 57 *Ga.* 55. But a sale of the property by an administrator for the purpose of paying debts divests the lien of the mortgage. *Newsom* v. *Carlton*, 59 *Ga.* 516, 519. And this is true even though the mortgage be in process of foreclosure at the time of the sale. *Reed* v. *Aubrey*,

91 *Ga.* 435. Such a sale also divests the lien of a common-law judgment. *Sims* v. *Ferrill*, 45 *Ga.* 585; *Stallings* v. *Ivey*, 49 *Ga.* 274; *Carhart* v. *Vann*, 46 *Ga.* 389. It had the effect of divesting a lien for purchase-money while the vendor's lien existed. *Stallings* v. *Ivey*, 49 *Ga.* 274; *McDaniel* v. *Edwards*, 56 *Ga.* 444. And in general it divests all liens (Code, § 3453, cited supra), and the holders must look to the proceeds.

"But it is urged that the law provides that 'Taxes shall be paid before any other debt, lien or claim whatsoever, and the property returned or held at the time of giving in, or after, is always subject.' It is true that section 883 of the Political Code so provides, but that section has uniformly been applied to taxes due the State, so far as I know. In *Gledney* v. *Deavors*, 8 *Ga.* 479, it was held that, where property was sold under a common-law execution after the lien of the State for taxes had attached, the sale did not prevent a fi. fa. for the taxes from proceeding, and a sale under the tax fi. fa. conveyed the better title. An examination of that case will show: first, that the taxes due the State were under discussion; second, that the opinion was largely based on the doctrine of the sovereignty of the State, and the inherent necessity for, and paramount right to collect, revenue by the sovereign; third, that to hold that the sale under judicial process affected the State's lien would be analogized to judicial interference with the collection of the State's taxes; and, fourth, that a provision in the act that, where a debtor for taxes dies between the time of giving in his taxes and the payment, there should be a priority on behalf of the State, and the administrator should be bound to respect that priority at the peril of personal liability, did not set aside a provision in the same act making such taxes a first lien; and, lastly, the learned judge argued earnestly that taxes were liens. See, also, section 884 of the Political Code. Now, the State, as a sovereign, stands on quite a different plane from municipalities. The power of the State to collect taxes (according to this opinion) is inherent and essential. A municipality has no such inherent power, but its power to collect taxes is dependent upon legislation, subject to the constitutional limitations as to uniformity, etc. Strict compliance with the law is required in order for

municipalities to seize and sell for taxes. *D'Antignac* v. *Augusta,* 31 *Ga.* 700; *Ansley* v. *Wilson,* 50 *Ga.* 418, 422. There is no prohibition against judicial interference with the collection of municipal taxes. *Vanover* v. *Davis,* 27 *Ga.* 354 (reaffirmed frequently since). The present provisions of law as to distribution after death are very different from that in the act then under discussion. But it may be conceded that the point actually ruled in that case would be good also as to municipal taxes, namely, that a sale under a common-law judgment would not divest the tax lien. See, also, in a case relating to State taxes, *Wilson* v. *Boyd,* 84 *Ga.* 34. It has been held that the lien for State taxes was not divested by a sale by an assignee in bankruptcy, the State having the privilege to enter the Federal court as a claimant, or to stay out and assert her sovereign rights. *Stokes* v. *State,* 46 *Ga.* 412. There was no State law in that case fixing its status as a claimant. Likewise the lien for taxes due the State was held not to be divested by a sale under a decree. *Atlanta R. Co.* v. *State,* 63 *Ga.* 483. In *Verdery* v. *Dotterer,* 69 *Ga.* 194, the point decided was that a sale for taxes displaced the lien of a mortgage. This was clearly a correct decision, because the taxes were due on the whole property. The mortgage was a mere lien. The charter of the City of Augusta provided that the tax assessments of that city should have the same lien and priority as taxes due the State, except that they should be postponed to the latter. Of course, when a lot was sold under a superior lien, it displaced an inferior lien. In *Freeman* v. *Atlanta,* 66 *Ga.* 617, the fact was that the lien for taxes attached on April 1, 1875. After that date the holder sold the land, and, upon failure of his purchaser to pay the purchase-money, obtained judgment, filed a deed, levied on the land, and sold it. *Held,* that this did not divest the tax lien for the taxes of the vendor, nor could a transferee of the fi. fa. issued therefor against the vendor have claimed the fund in court arising from a sale under the execution against the vendee. 'The sheriff's sale conveyed what the defendant [vendee] had; the lien attached to what the vendor had.' In other words, of course the vendor could not shake off the tax lien against his property, by selling the land at a private sale after the lien attached, nor by seeking to enforce

·his claim for the purchase-money against his vendee. The Civil ·Code (§ 2791) provides that 'Liens due the State or any county thereof, or municipal corporation therein, shall cover the property of "the taxpayer" from the time fixed by law for valuation of the same in each year until such taxes are paid,' etc. If this stood alone, it would furnish strong ground for the position of the defendants, but, where death and an administrator's sale intervene, this section must be construed with others in pari materia. I have already referred to section 3453, which declares that liens are divested by such a sale. Section 3424 declares that: 'In payment of the debts of a decedent, they shall rank in the following order: (1) Year's support for the family. (2) Funeral expenses, including the physician's bill and expenses of the last sickness, etc. (3) The necessary expenses of administration. (4) Unpaid taxes and other debts due the State or the United States.' Thus the State in such a case does not claim its first or superior lien, but by its own enactment places its claim for taxes fourth in the order of priority, and municipal taxes do not take that high a rank. The State might have asserted its sovereign right to retain its first lien, but .it did not see fit to do so, nor to place the claim for municipal taxes at the head of the list. Now, to say that in the distribution of the estate the State postponed her claim and that of her subordinate corporation to several others, and yet such a claim could stay out, and practically override all by selling the land again, would be most inconsistent. The State certainly did not mean to set a trap for purchasers at administrators' sales. In *Carhart* v. *Vann,* 46 *Ga.* 392, the case under discussion was whether an administrator's sale to pay debts divested the lien of a judgment, but the reason given for the decision is equally applicable here. After reciting the order of distribution as above set forth, the judge delivering the opinion said: 'This enumeration shows the necessity of allowing the administrator or executor to divest judgment liens by sale of the decedent's property to pay the debts of the estate; otherwise, the practical effect would be to give the judgment debt priority over the four classes hereinbefore named, for property would bring little or nothing at administrator's sale, if liable to be afterwards levied on and sold under ·

judgments obtained against the intestate.' In *Stallings* v. *Ivey,* 49 *Ga.* 274, the question was on the divesting of a vendor's lien by such a sale, but the reason is also applicable. On page 277 it is said: 'This array of debts or claims which have a priority over the vendor's lien, as well as over judgment liens, shows the necessity, as was stated in the case of *Carhart* v. *Vann,* ut supra, in relation to the lien of judgments, of allowing the administrator or executor to divest vendor's liens by sale of the decedent's property to pay the debts of the estate; otherwise, the practical effect would be to give the vendor's lien priority over the classes hereinbefore named; for property would bring little or nothing at administrators' sales, if liable to be afterwards levied on and sold under a decree for the enforcement of the vendor's lien.' In *Livingston* v. *Langley,* 79 *Ga.* 169, it was held that the claim of year's support was superior to that of sureties on a tax-collector's bond, who had paid a fi. fa. issued against him as principal, and them as sureties, by the comptroller-general, for taxes collected by him, and not paid over. The last sentence in the opinion of ex-Chief Justice Bleckley is, 'The year's support takes precedence even of taxes due the State.' But how can it do so if the land be offered for sale to realize a year's support, and yet it must be sold subject to be resold for taxes? This would be a contradiction in spirit, if not in terms. This argument seems to apply to State taxes as well as municipal taxes, but, if not to the former, certainly to the latter, which rank still lower down in the scale of distribution. *Hargrove* v. *Lilly,* 69 *Ga.* 326.

" It is urged that this ruling would require municipal officers or transferees of fi. fas. to exercise great diligence in watching administrations and administrators' sales. But, as administrators advertise their applications for appointment, their applications for leave to sell, and the actual sales, and have twelve months before being required to pay out any funds of the estate in their hands, it would entail no tremendous exertion to file a claim for taxes; certainly no more than all other creditors would have to exercise. And suppose it should entail on municipal tax-collectors or transferees of fi. fas. the duty of exercising the same diligence as if they themselves had a claim against the

estate, would that be so burdensome as to render the law invalid?
The construction I place upon this law is not without good,
sound reason back of it. It is suggested that quite often estates
are not large enough to more than pay the funeral expenses and
expenses of last sickness, and that the city would lose its tax
altogether in such cases. This may have been the very motive
which actuated the legislature in making the law. They may
have thought that, if the estate were too small to pay for the
burial of the head of the house and for the year's support of those
he left behind, and also to pay municipal taxes, of the two it
were better to let the latter stand aside. It is highly probable
that the legislature considered that the payment for the last of-
fices for the dying and the decent burial of the dead was more
important than to contribute to a tax fund for the pavement of
sidewalks or the laying of Belgian blocks to be trod by the feet
of the living, and that, however important and desirable water-
pipes, and schoolhouses, and sewers, and parks might be, bread
and clothes for the widow and orphans were even more so.

"Finally, it appears that there was an outstanding deed to
pay a loan, but the holder agreed with the administrator for the
latter to sell the whole title, and that the deed holder could look
to the fund as a creditor. This could be done. *Thompson* v. *At-
water*, 84 *Ga.* 270. It furnishes no ground for complaint on
behalf of the transferee of this tax fi. fa. The fi. fa. was issued
against the estate of the decedent, and it is desired to press it
against property as that of such estate. Surely, he can not
complain if there is more than he thought. On the whole, I am
of the opinion that the injunction should be granted. Let an
order be taken accordingly."

*J. K. Hines and J. T. Pendleton*, for plaintiffs in error.
*Arnold & Arnold*, contra.

SIMMONS, C. J.    This case was an application for injunc-
tion, and came before Judge Lumpkin of the Atlanta circuit.
In a well-considered opinion, showing much labor and research,
he granted the injunction. His opinion was made a part of the
record and brought to this court, and we have directed the re-
porter to incorporate it in his statement of the facts of the case.
It expresses our views so clearly that we content ourselves with

referring to it for our reasons for affirming the judgment. It was argued here that the opinion of Judge Lumpkin was based on section 3424 of the Civil Code as to the distribution of estates of decedents, and that that section did not apply to debts or claims accruing after the death of the decedent. We think that the very section itself enumerates debts and claims accruing after the death of the decedent. For instance, funeral expenses are given a higher rank than taxes. Further, section 3453 does not make any exceptions. It declares positively that where an administrator sells land under a proper order of the court of ordinary, liens thereon are divested and are transferred to the fund. It makes no exception of tax liens existing at the time of the death of the decedent or of those accruing after his death and before the sale. The scheme of the legislature in adopting this law seems to have been to provide that where an administrator obtained a proper order and sold the land thereunder, every person or political division of the State should look to the fund realized from the sale for the payment of liens or claims.

*Judgment affirmed. All the Justices concurring.*