68294. STATE REVENUE COMMISSIONER v. FLEMING et al.
(324 SE2d 821)

BEASLEY, Judge.

The issues on this appeal were made when the trial court, after judgment was entered in a condemnation action, ordered part of the proceeds to be paid to the executor of the landowner/estate for certain expenses of administration.

DOT commenced condemnation proceedings against land to be

used for a highway right-of-way, naming the executor of the estate, some lessees who are not involved in this appeal, the United States Internal Revenue Service (IRS) and the State of Georgia Revenue Commissioner (State), the latter two of which had extensive tax liens against the property. DOT determined the value of the property to be $34,961, the estate and lessees appealed and, upon trial, the jury awarded the condemnee $63,600. Prior to the condemnation proceedings, the executor, who was a member of a law firm, had entered into a contract with his firm whereby the firm would represent the estate in the condemnation proceedings for a fee of one third "of all sums collected," plus expenses. After judgment was entered on the verdict, first the law firm and then the executor filed motions for distribution of a substantial portion of the condemnation award for payment of attorney fees and expenses incurred in the condemnation proceeding and in other matters of estate administration, in an amount in excess of $46,000. The State filed its tax lien claim in an amount in excess of $300,000 and opposed the motions. The IRS tax lien claims exceeded one million dollars.

By order filed June 23, 1983 the trial court found the reasonable fee including expenses for the law firm representing the estate in the condemnation to be $20,000; the reasonable fee of another attorney for administration of the estate as well as in the condemnation proceeding to be $13,683.25; and the reasonable fee for yet another attorney's services concerning the administration of the estate unrelated to the condemnation to be $4,863.94. Finding all of these fees necessary expenses of the administration of the estate and that they were superior to the tax liens pursuant to OCGA § 53-7-91, the court ordered the total of the fees, $38,547.19, to be distributed to the executor from the condemnation award for satisfaction of the expenses of administration. By a subsequent order in December 1983, the remainder of the condemnation award was distributed on a pro rata basis, 23% to the state and 77% to IRS on their tax lien claims. IRS appealed from the final order and the State cross-appealed from the June 23 order. The IRS appeal has been dismissed (No. 68293) and the validity of the State's cross-appeal is not affected by the dismissal of the main appeal, under OCGA § 5-6-48 (e).

At this juncture, only the State complains regarding the distribution made by the superior court in response to the motions and claim, contending that the trial court in the condemnation case allowed the attorneys too high an award and also failed to give the State's tax lien claim priority over the expenses of administration, including attorney fees. The State enumerates five errors in which it raises and argues two issues: Whether the trial court erroneously awarded the executor's law firm attorney fees in excess of the written contract between the executor and the firm; and whether it was error to rule that the

State's tax liens were not superior to the attorney fees and estate administration claims.

What is critical here is that this involves the distribution of an amount represented by the judgment in condemnation proceedings in superior court and not in the administration proceedings in the probate court. The error that permeates this case stems from the trial court's disbursal of the condemnation proceeds by resolving issues properly raised in connection with the distribution of an estate only because the condemnee happens to be the executor of an estate. The instant case is simply an *in rem* condemnation proceeding.

If the distribution is allowed in the condemnation suit, it might defeat prior claims in administration. The proceeds of the judgment award should simply go into the estate to be distributed according to the priorities in administration and pursuant to *that* proceeding pursuant to OCGA §§ 53-7-92 and 53-7-93. The superior court in this condemnation action has no authority to order the distribution of this portion of the estate's total assets because the corpus is within the jurisdiction of the probate court, to be administered as a part of the estate pending there. Both the attorneys and the State merely have claims against the estate and no claims to a specific fund within the estate or to the proceeds of the sale of certain real property which is part of the estate.

The gross proceeds of the condemnation should all be paid to the executor and become part of the estate assets. OCGA § 53-4-9. Since the proceeds, including the fund already paid into court, do represent assets of an estate, regarding which the statutory law has already given priority to certain claims above taxes, the State cannot satisfy its tax lien first and supercede the priorities which attached to the estate at the moment of decedent's death. OCGA § 53-4-8. For the same reason, the expenses (primarily attorney fees) cannot be satisfied yet either. Otherwise they could defeat the prior claims of the widow, funeral director, and last sickness care providers. The attorneys representing the estate in the condemnation proceeding simply became after-death creditors and must await distribution along with other creditors according to the statutory scheme of priorities. Debts have their dignity fixed at the death of the decedent. *Green v. Allen*, 45 Ga. 206 (1872). Accord *Auld v. Schmelz*, 201 Ga. 42, 47 (39 SE2d 39) (1946). This is in conformity with the sound principles expressed in *Herrington v. Tolbert*, 110 Ga. 528 (35 SE 687) (1900). *Held*:

1. The trial court erred in granting the motions and directing distribution for the attorney fees and other expenses of administration to the executor's law firm and other lawyers. These claims had to be subjected to the prior claims of others who were not parties to the condemnation proceedings, and the law has provided the forum of the probate court in which these claims could be adjudicated and the rea-

sonableness of the fees of the executor's law firm could be judicially determined if there was a dispute. The superior court's determination of what was reasonable was done in isolation from the rest of the estate or claims, and this demonstrates its excess of power. We therefore do not reach the questions of reasonableness or of whether the contract of employment limited the fee, because the trial court erred in granting any amount.

2. The trial court exceeded its authority in ruling that the State's tax lien did not have priority over the attorney fees claim because that issue belonged first in the probate court proceeding. OCGA § 15-9-30 (a) (4). See *Boswell v. Underwood*, 106 Ga. App. 675 (127 SE2d 870) (1962). When viewed in its proper context, the issue fairly dissolves. In the instant case the decedent's land, against which the State had tax liens, was in effect judicially sold to DOT through the condemnation proceedings, and the liens then attached to the proceeds of the sale. OCGA § 53-8-51; OCGA § 48-2-57; *Armour Fertilizer Works v. Durrence*, 176 Ga. 519 (168 SE 572) (1933). Thus, under the reasoning of *Herrington v. Tolbert*, supra, 110 Ga. at 553, the State by virtue of OCGA § 53-7-91 placed its claim for taxes fourth in order of priority of claims against the estate, and below the expenses of administration, which the attorney fees in this case indisputably are. The first or superior lien for taxes which is provided in OCGA § 48-2-56 is relegated to a lower position when death of the landowner intervenes. The State has determined its public policy in this event by enacting the priorities in OCGA § 53-7-91. In construing the two provisions *in pari materia*, which must be done, it is clear that the State considers other interests more urgent than the tax revenues when a debtor dies owing taxes on his real property.

But the tax lien claim and the attorney fees claims would all have to be made in the estate administration rather than in the condemnation proceeding.

Therefore, the order appealed from is reversed, with direction, to vacate the order of November 23, 1983, and to enter a new order of disbursement in conformity herewith.

*Judgment reversed with direction. Birdsong, P. J., and Carley, J., concur specially.*

DECIDED DECEMBER 5, 1984.

*Michael J. Bowers, Attorney General, James P. Googe, Executive Assistant Attorney General, H. Perry Michael, First Assistant Attorney General, Verley J. Spivey, Senior Assistant Attorney General, David A. Runnion, Assistant Attorney General*, for appellant.

*Henry L. Whisenhunt, Herbert E. Kernaghan, Jr., J. Richard Dunstan*, for appellees.

CARLEY, Judge, concurring specially.

I concur in Division 1. I completely agree with the first sentence of Division 2 wherein the majority states: "The trial court exceeded its authority in ruling that the State's tax lien did not have priority over the attorney fees claim because that issue belonged first in the probate court proceeding." However, I strongly disagree with the next paragraph of the majority opinion wherein the majority proceeds to determine the merits of the issue of the priority of the State's tax lien claim even though the majority has recognized — and holds — that such claim must first be made in and decided by the probate court. This dicta by the majority is, in my opinion, improper because it could be interpreted as being this court's ruling upon an issue which we hold that the superior court had no authority to reach and which the proper court (probate court) has never had the opportunity to consider at all. If the superior court had no authority to decide this issue, this court certainly exceeds its authority in purporting to establish, before the fact, its opinion as to how the issue should be resolved.

I am authorized to state that Presiding Judge Birdsong joins in this special concurrence.