## HORNE *v.* RODGERS.

1. Where in a suit in equity upon an executory contract for the sale of land, the purchaser not being in possession, wherein such purchaser alleged fraudulent representations on the part of the vendor as to a mortgage upon the land, and, pending the suit, the vendor procured the mortgage to be canceled, a decree was rendered providing that, upon the vendor filing with the clerk " a good and sufficient warranty deed in fee simple," execution should issue against the vendee for the purchase-money ; under the law and the pleadings and evidence in the case in which the decree was rendered, the meaning of the words " a good and sufficient warranty deed in fee simple " was that the vendor must tender a good and sufficient marketable title before he could demand that the vendee accept the deed and pay the purchase-money.

2. The foregoing being true, the vendee could not be compelled to pay the purchase-money unless the vendor filed with the clerk a good and sufficient marketable title ; and it is immaterial, if there is a defect in the title, whether the vendee had notice of it before or after the rendition of the decree.

3. In 1882 an ordinary had no power or authority to grant a guardian of the persons and property of minors leave to sell " on the premises " lands not situated in a city.  A sale under such an order was invalid.

4. The title filed in the present case by the vendor, originating in part from the invalid sale, was defective in substance, and there was no sufficient compliance by the vendor with the terms of the decree.

LUMPKIN, P. J., dissenting.

Argued February 6,— Decided April 24, 1901.

Petition for injunction.  Before Judge Felton.  Bibb superior court.  June 28, 1900.

*H. V. Washington* and *Hall & Wimberly,* for plaintiff.  *Hardeman, Davis, Turner & Jones* and *Minter Wimberly,* for defendant.

SIMMONS, C. J.  In 1892 Horne purchased of Rodgers certain land in Bibb county, paying therefor partly in cash and pártly in notes.  Rodgers gave Horne a bond for titles, wherein he obligated himself, upon the full payment of the purchase-money, to make Horne good and sufficient titles to the land.  When the last note for the purchase-money fell due, Horne filed his equitable petition against Rodgers, asking for the cancellation of the note and the rescission of the contract of purchase, because of false representations and promises alleged to have been made to him by Rodgers as to

the satisfaction of a certain mortgage upon the land. Rodgers filed an answer in the nature of a cross-bill, and prayed for a judgment upon the note. This answer alleged, and the evidence showed, that, pending the litigation, the mortgage had been discharged and canceled. A decree was rendered of which the following is substantially a copy: "The jury having returned a verdict in the above-stated case, finding for the defendant, A. M. Rodgers, against the plaintiff, E. A. Horne, for the sum of [certain stated amounts], and the said A. M. Rodgers having tendered to the said E. A. Horne in open court his warranty deed to the property described in the bond for title from Rodgers to Horne of date the 4th day of May, 1892, and which property is also set forth in the contract between said Horne and Rodgers of date the 11th day of August, 1892, to wit: [describing the lands], and the mortgage on said lands given by A. M. Rodgers to T. J. Carstarphen having been canceled: Wherefore, it is considered, ordered, adjudged, and decreed by the court that the said A. M. Rodgers do recover of the said E. A. Horne [the first stated amounts], and the clerk of said court shall issue execution for said sums upon the said A. M. Rodgers filing with said clerk a good and sufficient warranty deed in fee simple to the lots herein described and set forth. On payment of this judgment said Horne's title to said land shall be perfect from the date of his purchase of said land, to wit, May 4, 1892." As will be seen, this decree found against Horne and in favor of Rodgers for the balance of the purchase-money, upon the latter's filing with the clerk a good and sufficient warranty deed in fee simple to Horne. When this was done execution was to issue, unless Horne paid the amount of the judgment. Horne excepted to the decree and brought the case to this court. Here the judgment of the lower court was affirmed. See 110 *Ga.* 362, where the facts are stated more fully than here.

After the affirmance of the judgment, Rodgers filed with the clerk of the superior court a warranty deed, in fee simple, purporting to convey the land to Horne. The latter refused to accept it or to pay the amount fixed in the decree, basing his refusal on the ground that the title of Rodgers was defective. The defect relied upon was that a one-fifth interest in the land belonged to certain persons by the name of Holmes, who, while minors, had obtained this interest as the result of certain litigation. It appears that the

guardian of these minors had applied to the ordinary of Bibb county for leave to sell the undivided interest thus obtained, on the ground that the land could not be satisfactorily divided among them and the other tenants in common, and that it was to the interests of the children to sell it. The ordinary granted the application and ordered that the land be sold "on the premises." It was sold under this order, and Rodgers claimed title, as to this one-fifth interest, under and through this sale. Horne contended that the ordinary had no authority either to grant the order to sell for division or distribution, as he construed the order, or to order that the sale take place on the premises, the land not being in a city. Rodgers had execution issued under the decree above set out, and it was levied upon property of Horne. Horne filed an application for injunction, setting out the above facts and the former equitable proceeding, and alleging that the title which Rodgers proposed to give him was defective for the reasons above indicated. He prayed that the contract of sale be rescinded, and that the purchase-money paid be returned to him. Rodgers in his answer denied most of the allegations of the petition, claiming that the decree meant only that he should make a warranty deed in fee simple, good and sufficient in form to convey what title he had, and to warrant the same, and not that he should convey a good title. His answer also claimed that his title was perfectly good and valid, for the reason that Carstarphen, from whom he purchased, had no notice of any defect or irregularity in the ordinary's order, and therefore received a good title at the sale. He also alleged that the minors had become of age and had been settled with by their guardian, being thereby barred from claiming any interest in the land. He also showed by the affidavits of two of them that they were satisfied with the settlement and disclaimed then and for the future any and all interest in the land. An affidavit of the other child was also introduced. This stated that at the time he had made settlement with his guardian he had had no notice of the illegality of the sale, that he had since refused to sign a quitclaim deed to the land, and that he intended to claim whatever rights he might have in the premises. Rodgers, in his answer, also claimed that if there was any defect in the title, Horne had notice of it pending the former litigation and before the rendition of the decree. An affidavit of Carstarphen was introduced which tended to prove that

this was so.   Horne denied it both in his petition and in an affi-davit introduced on the hearing.   The judge, after hearing the evi-dence and the argument of counsel, refused to enjoin the execu-tion.   Horne excepted.

1. Under the pleadings and evidence as above set out, the trial judge held, according to a recital in the bill of exceptions, that the meaning of the decree in the former case, that Rodgers should make a good and sufficient warranty deed in fee simple, was that he should make simply a warranty deed good in form and properly executed, and that it did not require that Rodgers should have and convey a good and sufficient title to the land.   In this ruling we think the learned judge erred.   If the bond for titles delivered by Rodgers to Horne had contained these exact words, it is now well settled that they would be construed to mean that Rodgers should convey a good and sufficient *title*, not merely such interest as he might have in the land.   Such words are held to mean that the vendor agrees and is bound to convey a good marketable title,— such a title as a reasonably prudent man would accept in purchas-ing the land or in securing a loan of money.   Burwell *v.* Jackson, 9 N. Y. 535; Porter *v.* Noyes (2 Greenleaf), 11 Am. Dec. 30, and note; Vought *v.* Williams, 8 L. R. A. 591; Moore *v.* Williams, 115 N. Y. 586, 5 L. R. A. 654.   The principle deduced from these cases is thus stated in 1 Warvelle on Vendors, 347: "In every contract for the sale of lands, whatever may be the language in which it is couched, there is an implied undertaking to furnish a good title, unless such an obligation is expressly excluded by the terms of the agreement, and, in the absence of any stipulation as to the kind of conveyance, to make such a deed as will render the sale effectual." See also p. 50.   Of course this applies only to executory contracts between the vendor and vendee, when the latter has not taken pos-session.   Under the same rule of construction, the decree here un-der discussion must be held to require that Rodgers should make to Horne a good and sufficient marketable title.   By his petition in the former case, Horne sought to cancel his last note for the pur-chase-money of this land, and to rescind the trade, because of false and fraudulent representations made to him as to the satisfaction of a mortgage upon the property held by Carstarphen.   Rodgers resisted, one of his grounds of defense being that the mortgage had been canceled, and that he was able to make to Horne a good title.

In the bond for titles Rodgers contracted to make good and suffi-cient titles. All this must have been in the mind of the judge when he rendered the decree and used the words above set out as to a good and sufficient warranty deed in fee simple. Under the construction which he now places upon these words, any deed, good in form, properly executed and attested, and containing a clause of warranty, would suffice to meet the requirements of the decree, al-though it might appear that Rodgers had no title at all. Under such a construction Horne could be made to pay for land which might on the next day be taken from him by the true owner. A strict grammatical construction of the decree might sustain the judge in his ruling, but we think such a construction should be made to yield to what is the obvious meaning of the language em-ployed, when it is taken in connection with the pleadings and facts of the case and with well-known legal principles. It may be con-tended that the construction we place upon the words, "a good and sufficient warranty deed in fee simple," is applicable only where they occur in a contract between the vendor and vendee, and can not be applied to a decree. With this we do not agree. If the law places this meaning upon the words when they are used in a contract of sale, no reason appears to us why the same meaning should not be placed upon them when they are used in a judgment or decree of court between the same parties and based on a con-tract of sale. The decree is nothing more than a contract by judg-ment. Rodgers agreed to make Horne good and sufficient titles to the land upon the payment of the purchase-money. In his cross-petition in the former case he asserted his ability and willingness to make such titles. The decree, under the construction we place upon it, simply followed his obligation and tender.

2. If there was a defect in the title as alleged by Horne, Rodg-ers could not, under the decree as above construed, compel Horne to accept the deed filed by him with the clerk. Horne is not obliged to accept any deed that does not convey a good and marketable title. Such a title is what he bargained for and agreed to pay for. Of course the defect must be one of substance and sufficient to affect the value of the title. All the authorities hold, so far as we have investigated them, that if the title is doubtful in law, or such that parol testimony is necessary to perfect it, it is not such title as the vendee can be compelled to accept. The law will not compel him.

to purchase a lawsuit or to accept a conveyance which a reasonably prudent man would refuse if he desired to purchase the land. "An agreement to make a good title is always implied in executory contracts for the sale of land, and . . a purchaser is never bound to accept a defective title unless he expressly stipulates to take such title, knowing its defects. His right to an indisputable title, clear of defects and encumbrances, does not depend upon the agreement of the parties, but is given by- law. . . A good title means not merely a title valid in fact, but a marketable title which can again be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence as a security for the loan of money. A purchaser will not generally be compelled to take a title when there is a defect in the record title which can be cured only by a resort to parol evidence, or when there is an apparent encumbrance which can be removed or defeated only by such evidence." Moore *v.* Williams, supra, 12 Am. St. Rep. 844; 1 Ballard's Ann. Real Prop. §§ 429, 430; 2 Id. § 711. In the present case it is contended that Horne knew, before the rendition of the decree, of the existence of the defect he now sets up, and that he should have set it up at that time. If we are correct in our construction of the decree, it is wholly immaterial whether Horne learned of the defect before or after the decree. He stands upon the decree, and it can make no difference in his rights thereunder whether he knew of the defect in the title while the former suit was pending or discovered it subsequently to the rendition of the decree. In neither case can he be compelled to take a defective title under a decree awarding him a good and sufficient title.

3. This brings us to a consideration of the question as to whether the deed tendered by Rodgers would convey a good and sufficient title, or one substantially defective. It appears that John A. Berkner had been appointed guardian for three minor children, and that, as the result of certain litigation, these children became entitled to a one-fifth undivided interest in about eleven acres of land, a portion of which is the land in controversy in the present case. The guardian applied to the ordinary of Bibb county for leave to sell the interest of his wards, stating in his application that the land could not be divided satisfactorily among the joint owners, and that he therefore desired leave to sell the undivided interest of the minors. At the next term of the court of ordinary the application was

granted, and the guardian authorized to sell the land and to make the sale "on the premises," after advertising same in terms of the law. The guardian sold the land to H. J. Berkner, reciting in the deed that the sale was made under and by virtue of the order of the ordinary. H. J. Berkner seems to have sold the land to Carstarphen, who sold his interest in the part in dispute to Rodgers. Horne claims that the sale by the guardian was illegal for two reasons: 1st. Because the ordinary had no power to authorize a sale of the land of the wards for purposes of distribution. 2d. That the ordinary had no power or authority to order the land to be sold on the premises, it not being within a city. Whether the first proposition is correct, under the decision in *Crawford* v. *Broomhead,* 97 *Ga.* 614, we do not now decide. It is sufficient here to hold that the second proposition is sound and correct. Where guardians were authorized by the ordinary to sell lands of their wards, the sale was to be made under the rules governing sales by administrators. The code provides that all sales made by sheriffs, executors, administrators, guardians, and the like shall be made at the court-house of the county, unless a different place of sale is authorized by law (as in Muscogee county, where the law authorizes the sheriff to sell at a certain place upon a certain street, not at the court-house). There is a section of the code allowing sheriffs to sell personal property on the premises, where it is such as to make its removal difficult or expensive. The Code of 1873, § 2560 (Civil Code, § 3452), authorized the ordinary to allow executors, administrators, guardians, or trustees to sell on the premises "any city property situated in any city in this State," when in his discretion such ordinary deemed it to the best interests of the cestuis que trust that such real estate should be so sold. Under this section the ordinary had authority to order land to be sold on the premises only where it was "city property situated in any city in this State." The land involved in the present case and sold by the guardian under the ordinary's order is not and was not situated in any city. Therefore the ordinary had no power or authority to order it sold upon the premises. The ordinary being without power to pass such an order and the guardian having sold under the invalid order, the sale was illegal.

The defect was not a mere irregularity, as contended by counsel for the defendant in error, nor could the purchaser at such sale be

an innocent purchaser, without notice of the defect.　The purchaser
at such a sale is bound to see that the officer has competent au-
thority to make the sale.　If the officer is without authority, the
purchaser is presumed to have notice of the lack of authority, and
can not be an innocent purchaser.　Section 3463 of the Civil Code
provides that if, in a sale by an administrator, "there be irregulari-
ties, or if he fail to comply with the law as to the mode of sale,
the sale is voidable except as to innocent purchasers."　This sec-
tion applies also to sales by guardians, but it protects innocent pur-
chasers against nothing except irregularities in carrying out a valid
order.　Indeed the first part of the section provides that, "to divest
the title of the heir at law, the administrator must have authority
to sell."　See the decision in *Patterson* v. *Lemon*, 50 *Ga.* 231, of
which this section seems to be a codification.　Counsel for the de-
fendant in error also argued that the minors whose land was thus
sold had since become of full age and had fully settled with their
guardian, and thus acquiesced in and ratified the sale.　Two of the
three appear to have signified their ratification by an affidavit con-
tained in the record, in which they disclaim any interest in or right
to the land.　The third and youngest of them, however, who seems
at the time of the trial to have been but twenty-four years of age,
made an affidavit which was in evidence that, at the time of his
settlement with his guardian, he was ignorant of the invalidity and
facts of the sale; that he had since refused to make a quitclaim
deed to the land; and that he " claims whatever right and title he
may have under the law to the premises."　We think that the set-
tlement of a ward with his guardian, made in ignorance of his rights
and of the facts, does not estop him to claim his rights in land
which had been illegally sold by the guardian.　While the two
older children in the present case may be now estopped by the dis-
claimer filed, the third does not appear to be estopped to set up
any right he may have.　If we are right as to the invalidity of the
ordinary's order, this claimant is entitled to a one-fifteenth undi-
vided interest in the land illegally sold, and, hence, to a one-fif-
teenth undivided interest in the land involved in the present case.
There is, therefore, a substantial defect in the title tendered by
Rodgers to Horne.

　· It was further argued that as Carstarphen, under whom Rodgers
held by warranty deed, was shown to be perfectly solvent, Horne

had a remedy for any damage sustained by reason of any defect in the title, even though Rodgers was insolvent. This we think we have already shown not to be sound, for we have seen that the vendee can not be compelled to purchase a lawsuit. Under the decree upon which he relies he is entitled to a good and marketable title, and until the vendor has filed a deed conveying such a title the vendee should not be compelled to pay. The judge therefore erred in refusing to grant the injunction.

*Judgment reversed. All the Justices concurring, except*

LUMPKIN, P. J., dissenting. The decree involved in this case should be interpreted in the light of the pleadings upon which it was rendered. Thus dealing with it, I think its true meaning was that Rodgers, having eliminated any danger to Horne's title arising from Carstarphen's mortgage, was entitled to a judgment against Horne, and that execution thereon should issue upon Rodgers merely filing in the clerk's office a warranty deed, in proper form, purporting to convey to Horne the lots in dispute. In my opinion, the decree did not mean, and should not be construed to mean, that this deed should have the legal effect of investing Horne with a perfect and unequivocal title against all mankind, or even a title which might be regarded as marketable. Granting that the rules laid down by the Chief Justice for the construction of contracts for the sale of land are all sound and well supported by authority, I am unable to see their application to the decree in question. Giving to it the meaning which I have indicated above, the question is: was the judge right in denying Horne's application for an injunction on his present petition? This petition was in the nature of a bill of review; and if available at all, it could only be so on the theory that Horne, for the reasons shown, had a right to set aside the original decree and substitute in its stead another decree fully protecting him in the premises. There are at least two good reasons for upholding the refusal to grant the injunction prayed for. The first is that Horne could not maintain his petition without showing that, unless he was granted the relief asked, he would be remediless and subjected to ultimate loss. In other words, equity would not take care of him unless he needed equitable relief. There was no allegation of insolvency as to Carstarphen; and as he was a warrantor behind Rodgers, Horne was not remediless; nor was his case maintainable upon the theory that he could not be compelled to pur-

chase a lawsuit, for his rights had been fixed by the original decree, which remitted him to the remedy afforded by the warranty, and upon this he ought to be required to stand, unless able to show that, because of the insolvency of both Rodgers and Carstarphen, the warranty will not protect him. Secondly, the evidence warranted the judge in finding that, before even the first decree was rendered, Horne knew there was some defect about the title on account of the claim of the Holmes heirs, expressly so stated to Carstarphen, and in the same connection remarked that he (Horne) cared nothing for this claim, but was only concerned about the mortgage which Carstarphen held. If, with such knowledge, Horne failed to make this attack on Rodgers' title in the first petition, a court of equity should not allow Horne to set aside the first decree on a ground of which he had knowledge when he prosecuted his former action, but of which he did not avail himself while the litigation thereon was pending and before it reached its final stage.