REDWINE et al. v. FRIZZELL et al.

No. 11556.  MARCH 13, 1937.  ADHERED TO ON REHEARING, MARCH 26, 1937.

*Norman I. Miller,* for plaintiffs.

*W. H. Armistead, J. V. Patrick,* and *W. O. Wilson,* for defendants.

HUTCHESON, Justice.  In the petition of Mary Hill Redwine and Randall Redwine against W. R. Frizzell, J. M. George, marshal, and W. M. Sparkman, deputy marshal of the municipal court of the City of Atlanta, W. H. Armistead, J. L. Patrick, and Myron M. Armistead, they sought injunction against execution of a dispossessory warrant, and cancellation of a security deed executed by Mary Hill Redwine, of notes evidencing the debt which the deed was given to secure, and of deed executed pursuant to a power of sale contained in the security deed.  To the sustaining of demurrers and dismissal of the petition the plaintiffs excepted. The following is a substantial statement of the facts and contentions as they appear from the allegations of the petition and the attached exhibits:

The plaintiffs have been residing on the property in dispute for the past twenty-five years. (The petition does not disclose the relationship of Randall Redwine to Mary Hill Redwine, or his age, other than what may be gathered from the above allegation.) Mary Hill Redwine, hereinafter referred to as plaintiff, after the

death of her husband who died seized of the property in dispute, continued to reside on the property, and in 1935 she borrowed on a 90-day note $1000 with which to pay taxes and repairs on the property. Desiring to take up the loan, the matter of securing the amount necessary was taken up with W. H. Armistead and Patrick, attorneys, who agreed to make the loan. Upon going to their offices Randall Redwine was informed by W. H. Armistead that he was putting up the money. The papers (presumably the notes and security deed) were presented to plaintiff, but were not read or explained to her. She is nearing 75 years of age, and can barely read with glasses, and on this occasion had no glasses with her. The amount needed to retire the 90-day loan was $1067, which with $33 to one Harrison totaled $1100, and these represented the only items plaintiff "knows of as having been paid out of the proceeds of said alleged loan transaction." The notes signed by her aggregated $1750, and the security deed recited that amount as its consideration, and named W. H. Armistead, agent, as grantee. On the $1100 so paid out the interest computed at six per cent. for the period of the loan amounts to $412.50, which added to the principal amounts to $1512.50. The $237.50 difference between this amount and the actual amount of the notes is alleged to be usury. After crediting the amount paid by petitioner on the loan to the principal, a portion of an installment still remains unpaid.

The following transfers of the security deed appear on the face of the record: "For value received, I hereby transfer, assign, and convey unto J. L. Patrick all my right, title, interest, power, and option in and under the within deed to secure loan, as well as the land described therein, and the indebtedness secured thereby, without recourse on me, but with full recourse on the property. In witness whereof I have hereunto set my hand and seal, this Dec. 2, 1935. [Signed] W. H. Armistead, Agent for J. L. Patrick." "For and in consideration of the sum of $1400 I hereby trans., sell, assign, and convey unto Myron M. Armistead all my right, title, interest, powers, and option in and under the within deed to secure loan, as well as the land described therein and the indebtedness secured thereby. In witness whereof I have hereunto set my hand and seal, this Dec. 2, 1935. [Signed] J. L. Patrick (Seal)." Both transfers were properly witnessed. It is

alleged that the transfers were insufficient to convey the right to exercise the power of sale in the security deed; that this right was not assignable; that the first transfer above was ineffectual as such, because not under seal; and that the taking of the security deed in the name of W. H. Armistead, agent, and the subsequent "pretended" transfers, were but a scheme to becloud the identity of the real party or parties "interested in the aforesaid transaction in which items aggregating $1100 were paid out for the purposes" stated. The security deed contains the following provisions: "Party of the first part hereby covenants that she is lawfully seized and possessed of said property, and has a good right to convey it, and that it is unencumbered," and "covenants and agrees that in case of any default . . the said principal note . . shall, at the option of the party of the second part, or assigns, then and thereby become due and payable," and "in case the debt hereby secured shall not be paid when it becomes due by maturity in due course, or by reason of a default as above provided, the party of the second part, or assigns, may enter upon said premises and collect the rents and profits thereof, and may sell the said property at auction at the usual place for conducting sales at the court-house in the county where the land lies, in said State, to the highest bidder for cash, first giving four weeks notice of the time, terms, and place of such sale, by advertisement once a week in a newspaper published in said county, all other notice being hereby waived by said party of the first part (and said second party or any person on behalf of said second party, or assigns, may bid and purchase at such sale), and thereupon execute and deliver to the purchaser at such sale a sufficient conveyance of said premises in fee simple, . . and the said first party hereby constitutes and appoints the said party of the second part, and assigns, the agent and attorney in fact of said first party."

The material portions of the advertisement of sale are as follows: "By virtue of the power of sale contained in a security loan deed executed by Mary Hill Redwine to W. H. Armistead, agent for J. L. Patrick, dated July 16, 1935, same being transferred to Myron M. Armistead, December 2, 1935, and recorded in deed book 1510, page 155, Fulton County records, said deed being given as security for the payment of 75 notes of $23.35 each, payable monthly, the power of sale being authorized upon the fail-

ure of the makers of said deed to pay said notes upon their maturity, and notes 5 and 6 inclusive having matured and being unpaid, there will be sold at public outcry before the court-house door in said county, during the legal hours of sale, on the first Tuesday in March, 1936, to the highest bidder for cash," the property in dispute. "Said sale will be held for the purpose of paying said indebtedness, and the expenses of this procedure. Sold as the property of Mary Redwine. [Signed] Myron M. Armistead as attorney in fact for Mary Redwine." Frizzell bid in the property at the sale, and a deed containing proper recitals was executed to him by Myron M. Armistead as attorney in fact for Mary Redwine. It is alleged that the advertisement of sale was an unfair exercise of the power contained in the security deed, for the reason that the advertisement did not state that the whole debt was due or the amount thereof, did not recite that the holder of the security deed had exercised his option to declare the whole debt due, did not show from whom the holder secured his right, title, and interest in the deed, and was too uncertain and indefinite as to the time of sale; and that all of these facts tended to and did chill the bidding at the sale. On May 4, 1936, the property involved was set apart to the plaintiff as a year's support, and she contends that as such it was not subject to the debt secured by the deed, and that the sale under power was ineffectual to pass any title; that "while the purported consideration on said deed to W. R. Frizzell is $1500," plaintiffs "are informed and believe and charge the fact to be true that such claimed consideration is fictitious, . . and that the aforesaid acts of said Armistead named as grantee in the alleged security deed, . . whereby he secured said deed and the alleged transfer of the alleged security deed from Armistead to Patrick and from the latter to Myron M. Armistead, and the bidding in of said property by said Frizzell, were in pursuance of collusion between the said Armistead, Patrick, and Myron M. Armistead and Frizzell to acquire the said property fraudulently and secretly for less than its value." It is not alleged that the plaintiff has not received credit for the amount bid at the sale by Frizzell, nor is the value of the property alleged.

1. "Although the security deed which contained the power of sale was under seal, this fact did not make it necessary that trans-

fers and conveyances of the indebtedness and the security should also be under seal. *Atlanta, Knoxville &c. Ry. Co.* v. *McKinney,* 124 *Ga.* 929 (5) (53 S. E. 701, 6 L. R. A. (N. S.) 436, 110 Am. St. R. 215); 49 C. J. 1288, § 119. The situation is different from that in which an agent attempts to execute an instrument under seal, where his appointment was not so made. *United Leather Co.* v. *Proudfit,* 151 *Ga.* 403 (107 S. E. 327)." *Wardlaw* v. *Woodruff,* 178 *Ga.* 240, 247 (173 S. E. 98).

2. The transferee of the security deed "having become the owner of the title conveyed by the security deed and also of the indebtedness secured thereby, and the power of sale not having been so expressed in the security deed as to be limited to the grantee therein named, but having been conferred upon the grantee or 'assigns,'" the transferee "was entitled to exercise the power to the same extent as the grantee might have done. In these circumstances he suceeded to all the rights of the original grantee, together with all remedies of enforcing the same, including those provided by the contract. Civil Code (1910), §§ 4276, 3345-3347 [1933, §§ 14-1802, 67-1706, 67-1707, 67-2302]; *Hunt* v. *New England Mortgage Security Co.,* 92 *Ga.* 720 (19 S. E. 27); *Palmer* v. *Young,* 96 *Ga.* 246 (22 S. E. 928, 51 Am. St. R. 136); *Ray* v. *Home &c. Investment Co.,* 98 *Ga.* 122 (26 S. E. 56); *Gillespie* v. *Hunt,* 145 *Ga.* 490 (89 S. E. 519); *Hightower* v. *Haddock,* 153 *Ga.* 160 (111 S. E. 413); 41 C. J. 682, 938. Nothing to the contrary was held in *Henderson* v. *Willis,* 160 *Ga.* 638 (5) (128 S. E. 807), or *Smith* v. *Pharr,* 162 *Ga.* 358 (133 S. E. 863), or *Sullivan* v. *Seago,* 163 *Ga.* 35 (135 S. E. 420)." *Universal Chain Enterprises* v. *Oldknow,* 176 *Ga.* 492 (168 S. E. 239).

3. One legally entitled to exercise a power of sale in a security deed, unless so required under the terms of the instrument creating the power, need not give notice to the grantor in order to effect a valid sale. *Garrett* v. *Crawford,* 128 *Ga.* 519 (57 S. E. 792, 119 Am. St. R. 398, 11 Ann. Cas. 167); *King* v. *Walker,* 141 *Ga.* 63 (80 S. E. 312).

4. Where a security deed authorizes the grantee or his assigns to accelerate the maturity of the debt secured thereby upon the failure of the grantor to pay any installment when due, at the option of the grantee or his assigns, some affirmative action on the part of the grantee or his assigns is necessary to effectively

exercise the option. *Harris* v. *Powers,* 129 *Ga.* 74 (58 S. E. 1038, 12 Ann. Cas. 475); *Pape* v. *Woolford Realty Co., 35 Ga. App.* 284 (2) (134 S. E. 174).

5. Whether or not the mere act of advertising property for sale under power is without more a sufficient election to declare the debt due under the option to accelerate maturity (Fowler *v.* Woodward, 26 Minn. 347, 4 N. W. 231), it is unnecessary that the advertisement should affirmatively recite the exercise of such option, where it does recite that the debt is past due and that the sale will be had in accordance with the power of sale; and since the petition does not allege a failure of the creditor to exercise such option before the advertisement, but alleges only that the advertisement does not upon its face disclose such election, the petition states no sufficient cause for setting aside the sale for inadequacy of the advertisement. This is true for the reason that the mere want of such recital in the advertisement does not show that the option had not been previously duly exercised. *Hiers* v. *Exum,* 158 *Ga.* 19 (122 S. E. 784); *Wardlaw* v. *Woodruff,* 175 *Ga.* 515 (165 S. E. 557). See generally 19 R. C. L. 497, §§ 293, 294; 41 C. J. 413, 1045, §§ 262, 846 et seq.; *Provident Savings Life Assurance Society* v. *Georgia Industrial Co.,* 124 *Ga.* 399 (2), 407 (52 S. E. 289); 41 C. J. 851, § 1036.

6. The precise reference, in an advertisement of sale under power, to the particular place in the public record where full information as to a fact of importance can be found, is the equivalent of the statement of such facts as can be accurately ascertained and authoritatively established by such record. *Hiers* v. *Exum, Wardlaw* v. *Woodruff,* supra; *Penn Mutual Life Ins. Co.* v. *Donalson,* 177 Ga. 84 (4) (169 S. E. 337). An examination of the record referred to in the advertisement in the present case will readily disclose the transfer by which the final transferee named in the advertisement secured his right, title, and interest in the security deed foreclosed. The cases of *Sims* v. *Etheridge,* 169 *Ga.* 400 (150 S. E. 647), *Plainville Brick Co.* v. *Williams,* 170 *Ga.* 75 (152 S. E. 85), *Cocke* v. *Bank of Dawson,* 180 *Ga.* 714 (5) (180 S. E. 711), and *Credit Investment Corporation* v. *Maddox,* 182 *Ga.* 193 (184 S. E. 859), are clearly distinguishable on their facts from the present case.

7. Where a security deed provides that in case of a sale under

the power contained in the deed the grantor or any person in possession under him "shall then become and be tenants holding over and shall forthwith deliver possession to the purchaser at such sale, or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over," the purchaser at such sale may bring proceedings against the grantor under the Code, § 61-301 et seq., providing for dispossessory proceedings against tenants holding over. See *Anderson* v. *Watkins, 42 Ga. App.* 319 (156 S. E. 43); *Chason* v. *O'Neal,* 158 *Ga.* 725, 733 (124 S. E. 519). In *Ray* v. *Boyd,* 96 *Ga.* 808 (22 S. E. 916), and *Stevens* v. *McCurdy,* 124 *Ga.* 456 (52 S. E. 762), there had been no sale under the security deed. Nothing herein ruled is contrary to the ruling in *Finn* v. *Reese, 36 Ga. App.* 591 (137 S. E. 574).

8. As the right of the widow to a year's support to be set apart from the estate becomes absolute and vested upon the death of the husband (Code, §§ 113-1002, 113-1004, 113-1005, 113-1006; *Brown* v. *Joiner,* 77 *Ga.* 232, 3 S. E. 157; *Swain* v. *Stewart,* 98 *Ga.* 366, 25 S. E. 831), the widow may, after the death of the husband and before the setting apart of the year's support, incur a debt for her support, and the debt so incurred will be enforceable against property subsequently set apart for her support. So far as incurring a debt for the support of the widow is concerned, there is no ground for difference between incurring the debt before the year's support is set apart and after it is set apart. "The necessity therefor may be as urgent in the one case as in the other." *Anders* v. *First National Bank of Barnesville,* 165 *Ga.* 682 (2) (142 S. E. 98).

9. A dwelling is necessary for the maintenance of the widow (*Morris* v. *Hasty,* 171 *Ga.* 648, 156 S. E. 602); and where the widow after the death of the husband lives in a home owned by the husband at the time of his death, and incurs a debt for repairs to said home, and executes a security deed conveying said property as security for the debt, and such home is subsequently set apart to her as a year's support, the year's support is subject to the debt, and may be sold under the power of sale in the security deed for the purpose of paying such debt. Nothing to the contrary was ruled in *Grant* v. *Sosebee,* 169 *Ga.* 658 (151 S. E. 336). In that case the debt was not one created for the maintenance and support of the widow.

10. "He who would have equity must do equity, and give effect to all equitable rights in the other party respecting the subject-matter of the suit." Code, § 37-104. "Under application of this maxim, before a borrower who has executed a deed to secure a debt can have affirmative equitable relief such as the setting aside of a sale by the creditor under exercise of a power contained in a security deed, and injunction against the creditor and persons claiming under him, to prevent interference with the debtor's possession of the property, such debtor must pay or tender the creditor the principal and interest due." *Biggers* v. *Home Building & Loan Asso.,* 179 *Ga.* 429 (176 S. E. 38); *Lalimer* v. *Lyon,* 177 *Ga.* 888 (171 S. E. 562); *Wilkinson* v. *Hollon,* 119 *Ga.* 557 (46 S. E. 620).

11. Before a borrower who has executed a deed infected with usury can have affirmative relief, . . he must pay or tender to the debtor the principal sum due. *Liles* v. *Bank of Camden County,* 151 *Ga.* 483 (107 S. E. 490), and cit.; *Wardlaw* v. *Woodruff,* supra.

12. Where after the death of her husband a widow incurs a debt, a part of which is for taxes and part for repairs to the property in which she has lived after the death of her husband, and executes a security deed on the property to secure the debt, and the property is subsequently set apart to her as a year's support, and even though the year's support may not be subject to that portion of the debt incurred for the payment of taxes (*Livingston* v. *Langley,* 79 *Ga.* 169, 3 S. E. 909; *Herrington* v. *Tolbert,* 110 *Ga.* 528, 35 S. E. 687; *Fullbright* v. *Boardman,* 159 *Ga.* 162, 125 S. E. 44, 37 A. L. R. 532; *Tomlinson* v. *Adel,* 169 *Ga.* 758, 151 S. E. 482), the widow must pay or offer to pay the amount of such debt for which the year's support is subject, before she would be entitled to have canceled the security deed, the notes evidencing the debt, and the deed to the purchaser executed under the power of sale contained in the security deed, and to enjoin the purchaser from proceeding with a dispossessory warrant.

13. The allegations of collusion between the defendants can not avail the petitioner, as no collusion to do anything unlawful, or anything lawful in an unlawful manner, is shown. If any collusion was shown, it amounted merely to an agreement to do something lawful in a lawful manner. *Lalimer* v. *Lyon,* supra; *Chastain* v. *Ball,* 183 *Ga.* 170 (187 S. E. 859).

The court did not err in sustaining the demurrers to the petition and in dismissing the case.

*Judgment affirmed. All the Justices concur, except Russell, C. J., who dissents.*

ATKINSON, J., concurs in the result.