29365. ATLANTA TITLE & TRUST CO. *v.* ERICKSON.

DECIDED JULY 16, 1942. REHEARING DENIED JULY 30, 1942.

892

*Tye, Thomson & Tye, R. A. Edmondson Jr.,* for plaintiff in error.
*Howard, Tiller & Howard, A. C. Corbett,* contra.

GARDNER, J. (After stating the foregoing facts.) In an executory contract for the sale of real property where the seller agrees

to furnish "a good and marketable title to said property," this is the kind of title which the law implies shall be given even though no kind of title is mentioned in the contract. In *Horne* v. *Rodgers,* 113 *Ga.* 224, 229 (38 S. E. 768), Chief Justice Simmons, speaking for the court, dealt with this principle very clearly and simply, quoting with approval the following statement: "His [purchaser's] right to an indisputable title, clear of defects and encumbrances, does not depend upon the agreement of the parties, but is given by law. . . A good title means not merely a title *valid in fact,* but a marketable title which can again be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence as a security for the loan of money." (Italics ours.) See *Winer* v. *Flournoy Realty Co., 27 Ga. App.* 87 (2) (107 S. E. 398). Therefore it is not a question only of having a valid title in fact, but it is more than this; it must be a valid title in fact which is merchantable and which can be sold to a reasonable purchaser, or mortgaged or transferred to a person of reasonable prudence as security for a loan.

So far as this case is concerned, even if we concede that the Supreme Court, the only tribunal with jurisdiction to pass on questions involving title to land, would in our opinion hereafter hold that the title is valid, in view of all the facts of this record, still we do not think that, under the several questions with reference to the title here concerned, this court can hold as a matter of law that the title now is such that the property could be sold to a reasonable purchaser or that a person of reasonable prudence would accept the title as security for a loan. There are involved: (a) the proper construction of the will; (b) a contingent remainder to the testator's grandchildren; (c) estoppel; (d) the power of the executrix under the will to execute a security deed with power of sale; (e) the authority of the court to grant an order to convey property as security for a loan; (f) whether terms of order were complied with; (g) the question of selling or encumbering without a court order; (h) a year's support. Also, there is expert testimony to the effect that the title rests under the shadow of a cloud. It seems clear to us that the fact-finding tribunal was authorized to find that even though the title may be valid, it is not a good and merchantable title. We do not mean to hold that the title is not valid. We do hold that the evidence as a matter of

law does not demand a finding that the plaintiff in error has a valid and merchantable title, for the reasons we have assigned.

*Judgment affirmed. MacIntyre, J., concurs.*

BROYLES, C. J., dissenting. The only question for consideration in the trial court and this court is whether the plaintiff in error had a good and merchantable title to the land in question. The defendant in error contends that the question should be answered in the negative because: (1) The will did not give the executrix the authority to borrow money. (2) The judge of the superior court had no authority to authorize the loan on the property (3) The loan deed did not follow the order of the judge limiting the loan to $1500, as the loan consummated was for $1920, and the loan deed had other provisions in it which were not authorized by the order of the judge. (Those provisions are not here set out for the reason that, under my view of the case, they are inmaterial.) (4) The power of sale in the loan deed was void, and therefore the plaintiff in error acquired no title by its purchase. (5) The executrix and her children had no authority to bind the unborn contingent remaindermen referred to in the will. (6) The widow's title to the land "derived through the year's support proceedings, under the decision in *Grant* v. *Sosebee,* 169 *Ga.* 658 (151 S. E. 336), is apparently paramount to" plaintiff in error's title.

Conceding, but not deciding, that the order of the judge of the superior court authorizing the loan was unauthorized by the law, I think that the executrix, under the broad powers bestowed upon her in the will, had the authority, without any court order, and without any specific provision in the will, to mortgage the lot in question to obtain money for the purpose of paying the testator's just debts. When she made the loan deed she was the executrix of the estate, and legal title to all of the property was vested in her. "Furthermore, executors are trustees, and they are trustees having legal title to devised realty for the purpose of using the same, or the proceeds of the same, to pay debts and for distribution of the devised realty among the devisees thereof." *Peck* v. *Watson,* 165 *Ga.* 853, 858 (142 S. E. 450). Therefore when the executrix, having legal title to the land, executed the loan deed, her title passed to the lender, with or without any order of court, and the legal title would remain in the lender unless and until some one owning the equity of redemption invokes the aid of a court of equity to

be permitted to redeem the land. *Kerr* v. *White*, 52 *Ga.* 362, 368; *Mitchell* v. *Miller*, 183 *Ga.* 703 (189 S. E. 523). In the instant case there is no one who can so invoke a court of equity. The equity of redemption vested in Mrs. Foster, who expressly assumed and agreed to pay the debt outstanding against the property. She, being the only person having an equitable interest in the property, would be the only possible person who could redeem it, and she, having assumed the debt, could not do so. *Setze* v. *First National Bank of Pensacola*, 140 *Ga.* 603 (79 S. E. 540); *Mathews* v. *Fort Valley Cotton Mills*, 179 *Ga.* 580, 588 (4) (176 S. E. 505).

The title of the plaintiff in error could not be attacked by either the executrix or her other children, because all three of them, together with Mrs. Foster, had participated in the application to the court to borrow the money, and are estopped from ever attacking an order which they requested the court to make. *Mize* v. *Harber*, 189 *Ga.* 737, 742 (4) (8 S. E. 2d, 1). Unless for some reason (and I can not conceive of any such reason) the title of Mrs. Foster to the equity of redemption should be held invalid, the order setting apart the property as a year's support for the widow was a nullity, since at the time of the order, the estate did not own any interest in the property. Conceding however that Mrs. Foster's title to the property was not good, and that it was properly set aside as a year's support, then the executrix would be the only person, except the plaintiff in error, who had any interest in the property, and under the above-cited decisons, she would be estopped from asserting it, and also estopped because of the fact that she received from the loan company the proceeds of the loan; and therefore her year's support would enure to the benefit of the loan company. *Redwine* v. *Frizzell*, 184 *Ga.* 230 (8), 236 (190 S. E. 789). The case of *Grant* v. *Sosebee*, supra, cited by the defendant in error, is not here applicable, for there the widow merely endorsed the loan note for her son-in-law and received none of the money. The other authorities cited in behalf of the defendant in error are also distinguished by their particular facts from the instant case.

The loan deed to the land in question executed by Salvador Valdes during his life was superior to his widow's right of a year's support. *Pinckney* v. *Weil*, 183 *Ga.* 567 (189 S. E. 8); *Richey* v. *First National Bank*, 180 *Ga.* 751 (180 S. E. 740). As to the rest of the loan obtained by the executrix in excess of the $700

used to pay the prior loan, it will be presumed, in the absence of anything to the contrary, that she used it for a proper and lawful purpose. *Whitfield* v. *Maddox,* 189 *Ga.* 870 (8 S. E. 2d, 57). The argument by the defendant in error that the possible unborn contingent remaindermen, referred to in the will, might some day assert a claim to the property, seems to me untenable. The equity of redemption to the land in question, originally belonging to the testator, had either passed to his daughter, Mrs. Foster, under the executrix's deed to her, or had passed to Mrs. Valdes as a year's support. In each instance the legal title could not be in Mrs. Valdes at the time of her death, and the possible contingent remaindermen alluded to in the will (the grandchildren, born or unborn, of the testator) were limited to "whatever property she [Mrs. Valdes] may die seized of under this will." The equity of redemption, whether owned by Mrs. Foster or by Mrs. Valdes, was terminated by the foreclosure of the loan deed, upon their default in paying the notes due thereunder.

In my opinion, the evidence, and the law applicable thereto, demanded a finding that the defendant had a good and merchantable title to the land in question, and that it could furnish such a title to the plaintiff, and that it was ready, able and willing to do so. It follows that the judgment in favor of the plaintiff was contrary to law and the evidence; and that the court erred in denying a new trial.

### ON MOTION FOR REHEARING.

Counsel earnestly insists that this court should determine whether the title is good in fact. In arguing this contention they cite *Mize* v. *Harbour,* 189 *Ga.* 737, 742 (4) (supra) ; *Wilson* v. *Aldenderfer,* 183 *Ga.* 760, 765 (189 S. E. 907) ; *Wiley* v. *Martin,* 163 *Ga.* 381 (136 S. E. 151) ; *Redwine* v. *Frizzell,* 184 *Ga.* 230, 236 (supra) ; *Jones* v. *Federal Land Bank,* 189 *Ga.* 419, 423 (6 S. E. 2d, 52) ; *Lunsford* v. *Kersey,* 191 *Ga.* 738 (13 S. E. 2d, 803) ; *Setze* v. *First National Bank,* 140 *Ga.* 603 (supra) ; *Matthews* v. *Fort Valley,* 179 *Ga.* 588 (4) (supra). Upon a careful examination of these cases it will be noted that in each of them the Supreme Court, clothed with complete jurisdictional authority to finally determine the issue presented in each case, was dealing with one or more of the intricate questions presented in the case at bar with a view of determining the status of the title under the facts of each

case. In the case at bar such is not the question. Counsel also cites *Willingham Loan & Trust Co.* v. *Moore*, 160 *Ga.* 550 (128 S. E. 751), and states that the court overlooked the principle of this case in our original opinion. We think a careful reading of the *Willingham* case will bear out the conclusion that our opinion is in conformity with the principle there laid down. The *Willingham* case involved an executory contract for the sale of land. We think the gist of the holding is expressed in an excerpt from 25 R. C. L. 275, § 76 (quoted on page 554 of the *Willingham* case), a part of which is as follows: "But though the court may entertain an opinion in favor of the title, if it is satisfied that that opinion may fairly and reasonably be questioned, it will refuse specific performance. The standard test of the sufficiency of the title is its marketability." The only question presented in the instant case for this court, as we said in our original opinion, is whether the evidence demanded a finding that the owner had a good and marketable title.

*Rehearing denied. MacIntyre, J., concurs. Broyles, C. J., dissents.*