48793. MRS. E. B. SMITH REALTY COMPANY et al. v. HUBBARD.

EBERHARDT, Presiding Judge. Mrs. Evelyn Lovinggood Hubbard, as

the administratrix de bonis non with will annexed of the estate of Elmo Lovinggood listed certain real estate with Mrs. E.B. Smith Realty Company for sale, and Mrs. Smith procured a purchaser who was ready, willing and able to pay the price asked. A contract for the sale of the property was prepared and executed by the parties by which it was agreed that the transaction would be closed upon conveyance to the purchaser, J. E. Starr, of a "good and merchantable title" to the property. The seller agreed to pay to Mrs. Smith, the realtor, a commission of exactly $6, 500 for procuring the purchaser, to be paid upon the closing of the sale, and if the failure to close should result from an inability or failure of the seller to deliver to the purchaser a "good and merchantable title" to the land, the stated commission was nevertheless to be paid.

Counsel for the purchaser discovered, in the course of investigating the title, that there was an uncertainty as to the location of the boundary, and of the land claimed by Mrs. Marjorie N. Lovinggood to a tract described as "Beginning at a point on Sandy Plains Road about 300 feet, more or less, from the South original line of [land] lot No. 557, said point being marked by a marble monument, and running thence in a Northerly direction along said road 150 feet to a marble corner, thence west 100 feet to a marble corner, then in a Southerly direction parallel with said road 150 feet to a marble corner, thence East 100 feet, more or less, to Sandy Plains Road and the point of beginning," which the seller did not own and was to be excepted out of the 32 acre tract to be sold.

Formerly the whole of the tract had been owned by Elmo Lovinggood, who had conveyed the 100 x 150 feet tract to his son, Edwin Lovinggood, who died and from whom his wife, Mrs. Marjorie Lovinggood inherited it. The conveyance from Elmo Lovinggood to Edwin Lovinggood was in April, 1946 and recited that a house was then under construction on the described lot. The house referred to was a home which Edwin Lovinggood and his widow have occupied without interruption since its completion in 1946. No witness, including Mrs. Marjorie Lovinggood, could recall ever having seen the marble monuments referred to in the deed. However, Mr. Lovinggood asserted that there had been iron pins at the four corners, and that there had been several surveys of the estate property, during some of which the pins had been moved. There was dispute as to the width of Sandy Plains Road, and thus the location of the line adjoining

the road, as well as the line on the back of the lot. Mrs. Lovinggood had a survey of the property made and testified that she had caused the pins to be "put back where they belong to be." A grocery and filling station had been constructed on the lot by Edwin Lovinggood during his lifetime and he and his wife operated it for many years. She testified that she asserted no claim to more than the deed called for — 100 x 150 feet, but it was plain that there was disagreement as to the location of the lines. A surveyor's plat of the lot made at her direction indicated the side lines to be 115 feet in depth, instead of 100 feet, as called for in the deed.

Counsel examining the title sought title insurance, and the insurance company issued a binder with an exception relative to the uncertainty of the location of the lot and indicated that before a policy would be issued an agreement should be obtained settling the location of the lines between the respective owners. There were negotiations for such an agreement, but none was ever reached.

When negotiations failed, the purchaser notified the seller that he was electing to terminate the purchase agreement and asked the realtor for a refund of the earnest money which he had paid down. It was refunded.

Mrs. Smith Realty demanded from the administratrix of the Lovinggood estate payment of the $6,500 commission due her, asserting that the sale had fallen through for no reason other than failure of the seller to produce and tender a "good and merchantable title," and upon refusal of the seller to pay, brought this action.

A prior appeal in *Smith Realty Co. v. Hubbard,* 124 Ga. App. 265 (183 SE2d 506) settled some of the issues as is there indicated. After that appeal, some motions for summary judgment were filed and overruled, and though the rulings were certified, none was appealed. At the same time the court ruled that in this status the sole question to be decided was whether there had been a failure of the seller to tender a "good and merchantable title." It is conceded that the seller was ready to execute a deed, and that the only defect in the title (other than such items as the payment of taxes, etc.) was the "floating description" of the excepted lot of Mrs. Marjorie Lovinggood, and thus the uncertainty of overlapping claims to portions of the property.

The case came on for trial before the judge without a jury and after the introduction of a great deal of testimony and documentary

evidence relative to the excepted lot, the surveys made, the uncertainty as to location, disputed corners or lines, etc., and of lawyers engaged in real estate practice and of an insurance executive who issues title insurance policies, concerning their views of whether the seller could deliver a "good and merchantable" title, a judgment was entered for the defendant seller, and the realtor appeals.

In the briefs of both the appellants and the appellee, it is asserted that the sole issue for determination on this appeal is whether the title tendered by the seller is good and merchantable. Was a contrary finding demanded either as a matter of law or by the evidence? All other issues have been settled by the prior appeal or are controlled by unambiguous terms of the contract. *Held:*

1. A reading of the record here leads inevitably to the conclusion that if he purchased in the present state of the title the purchaser would most likely be getting a lawsuit with Mrs. Marjorie Lovinggood, along with the land, in order to ascertain just where the land lines between them lie. We can find nothing upon which to fix them with certainty.

"All the authorities hold. . . that if the title is doubtful in law, or such that parol testimony is necessary to perfect it, it is not such title as the vendee can be compelled to accept. The law will not compel him to purchase a lawsuit or to accept a conveyance which a reasonably prudent man would refuse . . ." *Horne v. Rodgers,* 113 Ga. 224, 228 (38 SE 768).

An obligation to furnish a good and marketable title carries with it the obligation to furnish a deed; and if there are defects pointed out, the obligation to comply with all reasonable requirements to make the title marketable. *Atlanta Title & Trust Co. v. Erickson,* 67 Ga. App. 891 (21 SE2d 548). Cf. *Smith v. David,* 168 Ga. 511 (148 SE 265); *Douglas v. McNabb Realty Co.,* 78 Ga. App. 845 (52 SE2d 550). A title which exposes the vendee to litigation is not a good and merchantable one if the danger thereof is apparent and real, not merely imaginary or illusory, which may be apprehended upon the basis of some fact or truth as to which there can be no ascertainment with reasonable certainty. *Cowdery v. Greenlee,* 126 Ga. 786, 791 (55 SE 918).

A "good and merchantable" title need not be a perfect one, or even one that a title insurance company is willing to insure. *Douglas v. McNabb Realty Co.,* 78 Ga. App. 845 (3c), supra. It may be dependent upon prescription rather than upon the public records; if it is free from reasonable doubt and can be sold again

or mortgaged to a person or lender of reasonable prudence and who is informed of the facts, the title is merchantable. *Winer v. Flournoy Realty Co.,* 27 Ga. App. 87 (2) (107 SE 398); *Atlanta Title & Trust Co. v. Erickson,* 67 Ga. App. 891, supra. Cf. *Ellis v. Lockett,* 100 Ga. 719 (2) (28 SE 452). That a deed which is a muniment of title in the seller's chain of title was not attested so as to entitle it to record does not make the title unmerchantable. *Cowdery v. Greenlee,* 126 Ga. 786 (2), supra.

Under the evidence here it seems inescapable that there is sufficient danger of litigation and enough uncertainty as to what the purchaser would get by the conveyance to justify his refusal to close the transaction, and this appears to us to be a failure of the seller to produce and tender a good and merchantable title.

2. That the description in the deed from Elmo Lovinggood to his son Edwin is so vague and uncertain as to fail to meet the standards required by law for a conveyance and thus may have been void for the uncertainty, does not bring us to a different conclusion. It must be conceded that from the description no beginning point can be arrived at with certainty. Conceding that there is a key for discovering which side of the road it is to be found on, "about 300 feet more or less" from the South land lot line would run it up and down the road like a yo-yo.[1] There is dispute as to the width of the road. The description calls for marble markers at the four corners and nobody has ever seen any. Iron pins which somebody, at some time, put down have been moved from time to time. But Mrs. Lovinggood and her husband were *in possession* of some land when his father gave the deed back in 1946 and this possession has continued without interruption. There is a house, a store and filling station on it, which she still occupies. This is enough to put the world on notice of their claim to the portion of the land to which she may be able to establish possession. Code § 85-408. It is evident that determination of the extent of her possession may require a lawsuit. But it is likewise evident that Mrs. Lovinggood does have a viable claim to a quantity of land at some location within the tract which was the subject-matter of the contract and which was to be excepted from the sale. The

---

[1] A subdivision plat of the property, made for the Lovinggood estate, shows the distance from the south land lot line along Sandy Plains Road to the point which the surveyor indicated as the beginning point of the excepted lot, or the Marjorie Lovinggood lot, to be 360.89 feet. Apparently this was from a location of the iron pin then in place.

problem is, just what was to be excepted. Perhaps it is conceded to have been a lot 100 x 150 feet in size, but just *where* is it located? How does one settle a "floating description" to a certain and definite location?

In our view the title tendered was not "good and merchantable," and the purchaser was justified in refusing to close the transaction. However, the contract between the seller and the realtor is clear and unambiguous, and under its terms the realtor has earned the commission agreed upon, and the seller's obligation to pay does not fail because of his inability to close for lack of merchantable title.

*Judgment reversed. Pannell and Stolz, JJ., concur.*

ARGUED NOVEMBER 9, 1973 — DECIDED JANUARY 29, 1974.

*Howard, Wiggins & Smith, Walter A. Smith, Flournoy & Still, Charles A. Evans,* for appellants.

*Crowe & Hampton, James G. Hampton,* for appellee.